IN THE UNITED STATES DISTRICT COURT
FOR THE <u>SOUTHERN</u> DISTRICT OF TEXAS
<u>HOUSTON</u> DIVISION

Form To Be Used By A Prisoner in Filing a Complaint
Under the Civil Rights Act, 42 U.S.C. § 1983

<u>LILLY ANNE HOPKINS, AKA</u>
<u>SAMUEL HOPKINS, TDCJ# 1986831</u>
Plaintiff's name and ID Number

<u>JOHN B. CONNALLY UNIT</u>
Place of Confinement

United States Courts
Southern District of Texas
F I L E D

FEB 1 8 2020

David J. Bradley, Clerk of Court

CASE NO: <u>4:19-cv-05041</u>
(Clerk will assign the number)

v.

<u>LORIE DAVIS _ TDCJ CID Director</u>
<u>PO Box 99, Huntsville, TX 77342</u>
Defendant's name and address

<u>LANNETTE LINTHICUM _ TDCJ Health Services Div. Dir.</u>
<u>2 Financial Plaza, ste 625, Huntsville, TX 77340</u>
Defendant's name and address

<u>DR. JOSEPH PENN - UTMB, Head of TDCJ Psychiatry</u>
<u>UTMB, 301 University Blvd, Galveston, TX 77555</u>
Defendant's name and address
(DO NOT USE "ET AL.")

AMENDED COMPLAINT

## INSTRUCTIONS - READ CAREFULLY

**NOTICE:**

**Your complaint is subject to dismissal unless it conforms to these instructions and this form.**

1. To start an action you must file an original and one copy of your complaint with the court. You should keep a copy of the complaint for your own records.

2. Your complaint must be <u>legibly</u> handwritten in ink, or typewritten. You, the plaintiff, must sign and declare under penalty of perjury that the facts are correct. If you need additional space, **DO NOT USE THE REVERSE SIDE OR BACK SIDE OF ANY PAGE**. ATTACH AN ADDITIONAL BLANK PAGE AND WRITE ON IT.

3. You must file a separate complaint for each claim you have unless the various claims are all related to the same incident or issue or are all against the same defendant, Rule 18, Federal Rules of Civil Procedure. Make a short and plain statement of your claim, Rule 8, Federal Rules of Civil Procedure.

4. When these forms are completed, mail the original and one copy to the Clerk of the United States Court for the appropriate District of Texas in the Division where one or more named defendants are located, or where the incident giving rise to your claim for relief occurred. The list labeled as "VENUE LIST" is posted in your unit law library. It is a list of Texas prison units indicating the appropriate District Court, the Division and an address of the Divisional Clerks.

pg 1 of 16

**FILING FEE AND IN FORMA PAUPERIS**

1. In order for your complaint to be filed, it must be accompanied by the filing fee of **$350.00**.

2. If you do not have the necessary funds to pay the filing fee in full at this time, you may request permission to proceed *in forma pauperis*. In this event you must complete the application to proceed *in forma pauperis* (IFP), setting forth the information to establish your inability to prepay the fees and costs or give security therefore. You must also include a six (6) month history of your Inmate Trust Account. You can acquire the application to proceed IFP and appropriate Inmate Account Certificate from the law library at your prison unit.

3. 28 U.S.C. 1915, as amended by the Prison Litigation Reform Act of 1995 (PLRA), provides, "…if a prisoner brings a civil action or files and appeal *in forma pauperis*, the prisoner shall be required to pay the full amount of a filing fee." Thus, the Court is required to assess and, when funds exist, collect, the entire filing fee or an initial partial filing fee and monthly installments until the entire amount of the filing fee has been paid by the prisoner. If you submit the application to proceed *in forma pauperis*, the Court will apply 28 U.S.C. 1915 and, if appropriate, assess and collect the entire filing fee or an initial partial filing fee, then monthly installments from your Inmate Account, until the entire **$350** filing fee has been paid.

4. If you intend to seek *in forma pauperis* status, then do not send your complaint without an Application to Proceed IFP, and the Certificate of Inmate Trust Account. Complete all the essential paperwork before submitting it to the Court.

**CHANGE OF ADDRESS**

It is your responsibility to inform the Court of any change of address and its effective date. Such notice should be marked **"NOTICE TO THE COURT OF CHANGE OF ADDRESS"** and shall not include any motions(s) for any other relief. Failure to file a NOTICE TO THE COURT OF CHANGE OF ADDRESS may result in the dismissal of your complaint pursuant to Rule 41(b), Federal Rules of Civil Procedures.

**I. PREVIOUS LAWSUITS:**

A. Have you filed any other lawsuits in the state or federal court relating to imprisonment?          YES   __XXX__   NO

B. If your answer to "A" is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, giving the same information.)

   1. Approximate date of filing lawsuit: _____

   2. Parties to previous lawsuit:
      Plaintiff(s): _____

      Defendant(s): _____

   3. Court (If federal, name the district; if state, name the county) _____

   4. Docket Number: _____

   5. Name of judge to whom case was assigned: _____

   6. Disposition: (Was the case dismissed, appealed, still pending?)

   _____

   7. Approximate date of disposition: _____

**II. PLACE OF PRESENT CONFINEMENT:** John B. Connally Unit

**III. EXHAUSTION OF GRIEVANCE PROCEDURES:**

Have you exhausted both steps of the grievance procedure in this institution? __XXX__ YES  ___ NO

Attach a copy of the Step 2 grievance with the response supplied by the prison system.

**IV. PARTIES TO THE SUIT:**

A. Name of address of plaintiff: Lilly Anne Hopkins, aka Samuel Hopkins #1986831
899 FM 632, Kenedy, TX 78119

B. Full name of each defendant, his official position, his place of employment, and his full <u>mailing</u> address.

Defendant #1: Lorie Davis - TDCJ-CID Director
P.O. Box 99, Huntsville, TX 77342

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.
She is violating my Eighth Amendment rights guaranteed by the U.S. Constitution

Defendant #2: Lannette Linthicum - TDCJ Health Services Division Dir. CMHCC Member
2 Financial Plaza, Ste 625, Huntsville, TX 77340

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.
She is violating my Eighth Amendment rights guaranteed by the U.S. Constitution

Defendant #3: Dr. Joseph Penn - UTMB, Head of TDCJ Psychiatry
UTMB, 301 University Blvd, Galveston, TX 77555

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.
He is violating my Eighth Amendment rights guaranteed by the U.S. Constitution

Defendant #4: Robert D. Barrow, M.D. CMHCC Member and Chairperson
UTMB, 301 University Blvd, Galveston, TX 77555

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.
He is violating my Eighth Amendment rights guaranteed by the U.S. Constitution

Defendant #5: See attached list.

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.

ATTACHMENT TO SECTION IV PARTIES TO THIS SUIT

Defendant #5; Ben Raimer, M.D. - CMHCC Member
UTMB, 301 University Blvd, Galveston, TX 77555
He is violating my Eighth Amendment rights guaranteed by the U.S. Constitution

Defendant #6; Cynthia Jumper, M.D. - CMHCC Member
UTMB, 301 University Blvd, Galveston, TX 77555
She is violating my Eighth Amendment rights guaranteed by the U.S. Constitution

Defendant #7; Erin Wyrick - CMHCC Member
UTMB, 301 University Blvd, Galveston, TX 77555
She is violating my Eighth Amendment rights guaranteed by the U.S. Constitution

Defendant #8; Preston Johnson, Jr. - CMHCC Member
UTMB, 301 University Blvd, Galveston, TX 77555
He is violating my Eighth Amendment rights guaranteed by the U.S. Constitution

Defendant #9; F. Parker Hudson III, M.D. - CMHCC Member
UTMB, 301 University Blvd, Galveston, TX 77555
He is violating my Eighth Amendment rights guaranteed by the U.S. Constitution

Defendant #10; John Burmusa, M.D. - CMHCC Member
UTMB, 301 University Blvd, Galveston, TX 77555
He is violating my Eighth Amendment rights guaranteed by the U.S. Constitution

Defendnat #11; Kelly Garcia - CMHCC Member
UTMB, 301 University Blvd, Galveston, TX 77555
They are violating my Eighth Amendment rights guaranteed by the U.S. Constitution

4

## V. STATEMENT OF CLAIM:

State here in a short and plain statement the facts of your case, that is, what happened, where did it happen, when did it happen, and who was involved. Describe how each defendant is involved. You need not give any legal argument or cite any cases of statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach extra pages if necessary, but remember that the complaint must be stated briefly and concisely. IF YOU VIOLATE THIS RULE, THE COURT MAY STRIKE YOUR COMPLAINT.

See Attached.

## VI. RELIEF:
State briefly exactly what you want the court to do for you. Make no legal arguments. Cite not cases or statutes.

See Attached.

## VII. GENERAL BACKGROUND INFORMATION:

A. State, in complete form, all names you have ever used or been known by including any and all aliases:

Lilly Anne Hopkins, Samuel Thomas Hopkins, Sugar Bear, Sammi

B. List all TDCJ-ID identification numbers you have ever been assigned and all other state or federal prison or FBI numbers ever assigned to you, if know to you.

#1986831

## VIII. SANCTIONS:

A. Have you been sanctioned by any court as a result of any lawsuit you have filed? ____ YES  XXX NO

B. If your answer is "yes", give the following information for every lawsuit in which sanctions were imposed. (If more than one, use another piece of paper and answer the same questions.)
   1. Court that imposed sanctions (If federal, give district and division): _____
   2. Case Number: _____
   3. Approximate date sanctions were imposed: _____
   4. Have the sanctions been lifted or otherwise satisfied? ____ YES ____ NO

5

ATC 1983 (Rev. 04/06)                Page 4 of 5

ATTACHMENT TO SECTION V. STATEMENT OF CLAIM

1. Plaintiff Lilly Anne Hopkins, legal name Samuel Hopkins TDCJ# 1986831 is an incarcerated male-to-female transsexual/transgender individual. She has had permanent and irreversible changes to her body as part of her transition and is living to the fullest extent possible as a woman. Respectfully she requests the Court, and the parties to this action, to use female pronouns in referencing her. Both of the Gender Specialists treating her have also acknowledged her as a transgender female and have adopted the use of female pronouns.

2. Plaintiff was diagnosed as a reported history of Gender Dysphoria as of January 26, 2016. Plaintiff was formally diagnosed with Gender Dysphoria (GD) as of October 10th, 2016. There is documentation of both of these diagnoses in the written medical record. GD, previously known as Gender Identity Disorder (GID), is a condition relating to clinically significant distress caused by a discrepancy between a person's gender identity (internal sense of whether one is male or female) and sex assigned at birth (and the associated gender role and/or primary or secondary sex characteristics). GD, if left untreated, can result in clinically significnt psychological distressm, dysfunction, debilitating depression, and for some suicidality and death.

3. From the summer of 3003 until the time of her incarceration in December of 2012 the plaintiff lived as a woman part time. The plaintiff's condition relates to the distress that she feels because her gender identity does not line up with both her primary and secondary sex characteristics <u>and</u> her gender role and expression. When I dress and groom as a woman I no longer feel trapped in a male exterior. My outsides match my inside sense of being female and there is unity. It gives me dignity and reduces greatly the distress I feel in this body.

4. In Jail and initially in Prison I attempted to hide my transgender status but I could not stand the intense distress of not treating my condition, ultimately leading to an exceptional number of suicide attempts before finally deciding to

6

get help. In January of 2016 I sought to continue Hormone Replacement Therapy (HRT). I sought help multiple times but was unsuccessful when parties involved refused to make the appropriate referrals and assist me. The consequences of lack of initiation of hormones when medically necessary includes a high likelihood of negative outcomes such as surgical self-treatment by autocastration, depressed mood, dysphoria and/or suicidality. During the period of non treatment I both castrated myself and attempted suicide.

5. I castrated myself at the Ellis Unit in Huntsville Texas on Saturday March 12th, 2016 at evening time. I was living as a man at a male prison and was extremely uncomfortable in my body and gender expression. I was experiencing intense emotional distress and began to formulate a plan to remove my testicles. I already had the plan and supplies ready and in place which I had been preparing for weeks when I got a final "push' by a guard who said "you ain't no woman, you got balls between your legs don't ya." She also ordered me to remove my makeup. Irregardless the castration would have happened but this did give a good push. The distress I felt in that body was significant.

6. The initial plan was to cut off circulation using three rubber bands but after an hour I did not think I could make it the days necessary due to the intense pain so I broke open two razors to procure four blades. I then used the blades to cut open my scrotal sac, remove most of the sac, and then to severe everything outside my body. The pain was intense but the emotional pain that I felt was more intense and propelled me forward.

7. The last thing I severed was a cord of some kind, either a vein or an artery. It began pouring blood out and I could not stop the flow of blood. I flushed all tissue so that it couldn't be saved and then sought medical attention while applying pressure. I ended up getting an emergency transfusion and then sent to another hospital for surgery. Post op I asked if it was all gone and when they confirmed that it was I laughed and cried with relief and joy.

7

8. The autocastration has impacted my treatment plan in minimal ways in that my treatment plan isn't tailored to my needs with the exception of HRT. In that respect it has eliminated the need for testosterone blockers which are normally taken as a part of HRT. In my case my testosterone levels are low by typical female standards.

9. The autocastration's impact on my disorder has been a significant and positive one. It is in fact a procedure which is part of Sexual Reassignment Surgery, which I hope to one day more fully complete. It has helped me to have greater comfort with my body through the elimination of part of my primary male sex characteristics. It has helped me to walk and sit in a more feminine manner and has made gender appropriate underwear more appropriate. It has given me greater comfort in my body and helped with my disorder.

10. Following the autocastration I was sent to a mental health unit and I again sought help for the gender issues. I was not successful in receiving treatment at that time but was finally referred to the appropriate people. I did inform the mental health staff that I would likely kill myself within the year. In the mental health unit my GD worsened as I could no longer even shave or groom in a feminine manner as I was accustomed to. I tried plucking with my fingers but this did no good. The conditions there seriously aggravated my GD. I was released back to my unit but was there unstable and facing going back to the mental health unit. Still haveing received no help for GD and facing a situation which would exacerbate my condition I attempted suicide by slicing into my neck and severiing my jugular veins using a razor blade. Officers found me covered in blood and lying in a pool of blood and provided emergency medical attention, including being life flighted, saving my life. This occurred on June 24th, 2016.

11. On October 10th, 2016 I was formally evaluated and diagnosed with GD. My hope for living at this point was to live as a woman. I could no longer endure the thought of living as a man. On December 12th, 2016 I was started on HRT in accordance

8

with Correctional Managed Health Care(CMHC) Policy G-51.11 "TREATMENT OF OFFENDERS WITH INTERSEX CONDITIONS OR GENDER DYSPHORIA FORMALLY KNOWN AS GENDER IDENTITY DISORDER." This policy is established by the Correctional Managed Health Care Committee (CMHCC). G-51.11 provides for one treatment option for GD, and one treatment option only, HRT. There is in effect a blanket ban on all other treatment options for GD including Gender Role and Expression irregardless of an individual patient's needs. I started receiving HRT on December 12th, 2016.

12. TDCJ and the Gender Specialists do not provide for a full treatment plan for GD. They provide HRT and occassionally note that there is a need for additional care, but it stops there. Someone such as myself in the world would have hair removal, changes in gender role and expression, HRT, and then finally Sexual Reassignment Surgery. A Treatment plan could involve other things such as voice therapy (which I could benefit from). A full Treatment plan would be tailored to the needs of the individual and not one size fits all. It is the same with other medical conditions. For cancer you might need surgery, radiation, or chemo, you might need a combination of all three, it depends on your needs and a one size fits all approach isn't appropriate.

13. Beginning in 2018 and continuing to present the GD Specialists have noted self-harm, self-mutilation, and suicidal ideation in me regarding gender role and expression and have noted that I could benefit from being able to express myself as female. Currently I am being forced to dress and groom as a man according to TDCJ Policy. But the Gender Specialists are not able to provide this care which is the very first treatment option listed in the Standards of Care (SOC) put out by the World Professional Association of Transgender Health (WPATH). The SOC represents the generally accepted standards of care in treating GD and is even referenced in CMHC Policy G-51.11.

14. The Gender Specialists are not allowed to develop an individual treatment plan. G-51.11 only allows for HRT and serves as a blanket ban on all other treatments.

In my case they have both expressed a desire to assist me with gender expression but are not allowed to do so. Dr. Gordon even noted that she brough my case to the head of TDCJ Psychiatry, Defendant Dr. Joseph Penn, but has not been able to get me help. As of yet there is no full treatment plan. They have noted some of what treatment would help me and it has stopped there, even that is not being implemented.

15. The first Gender Specialist to directly state in the medical record that I could benefit from being able to express myself as female was Kayli Dozier, NP. She then also noted the two areas I felt could help me best, longer hair and female clothing. The other Gender Specialist, Jesse Gordon, D.O., has also noted in the written record that I have increased dysphoria related to gender expression and even brought my case before Dr. Joseph Penn in light of the significant distress I am experiencing related to gender expression, but again that care is not provided.

16. I sought to have the recommended care provided after it was not provided by the GD Specialists. The Dr. I met with actually tried to provide this care but the CMHC system that the CMHCC is responsible for would not allow her to provide this care. Upon grieving the issue they then relied upon TDCJ policies to prevent this care. I was told to address this through TDCJ channels which I did and they relied upon TDCJ Policies which Lorie Davis is responsible for.

17. Gender Expression, as discussed with the Gender Specialists, has included; hair, clothing, and makeup. The Gender Specialists have both indicated a desire to help me but they have informed me that they are not allowed to. They are prevented by TDCJ and CMHCC Policies and are even limited in what they are allowed to record in my medical record.

18. I have only included hair and clothing in this lawsuit because these areas cause me the most distress, are both mentioned in the record as causing me the most distress, and are both were the two elements of gender expression that I explicityly and fully grieved.

19. Living with GD in TDCJ is for me my own place of torment to a degree not experienced by other prisoners. Two things occur, the first is that I am housed in an institution that doesn't correspond to my gender identity and the second thing is the rigid imposition of gender norms based not upon my gender identity but upon my sex assigned at birth. I am forced to dress in male clothing and forced to groom with male grooming standards. TDCJ has both female grooming standards as well as female clothing standards what could be applied to my care but they are not.

20. When I am forced to dress and groom as a man it destroys my self image and I feel trapped in a male shell. It eradicates my female gender expression and I feel distress to the point that I want to die. It results in self-harm, self-mutilation, and suicidal ideation. There is this huge discrepancy between my internal sense of gender identity and the forced cross gender expression. It is humiliating and degrading and this treatment is only inflicted on transgender prisoners. Cisgender prisoners, that is prisoners whose gender identity corresponds to their sex assigned at birth are allowed to dress and groom in a way that reflects their gender identity. They aren't forced to endure the humiliation of forced cross gender expression.

21. I am simply trying to live as any other female prisoner. When I am forced to live as a male prisoner it reinforces the shame in my body, in being born into a body that doesn't match who I "know" that I am. It compounds the distress that I already feel.

22. When I am forced to groom as a man my identity is stripped away from me and my body is degraded and humiliated. It feels like an act of violence and I almost always self-harm afterwards.

23. In the world I dressed as a woman when able to do so because it gave me the feeling of being on the outside what I was on the inside and it reduced my distress from GD. I have stopped wearing boxers in here despite that it is the only underwear either provided or available for purchase. Now that I'm castrated it feels even more completely innappropriate to wear them. Dressing as my gender gives me self

11

esteem and reduces the distress that I feel being in the wrong body.

24. TDCJ has female grooming and female clothing standards which if applied to my care would allow me to receive the beneficial treatment that the GD Specialists believe would help me, but I have not been allowed to use these standards and policies. Lorie Davis is responsible for the TDCJ Policies and the CMHCC is responsible for the medical policies. The medical policies and TDCJ's policies prevent the Gender Specialists from providing needed care based upon my particular medical needs. The care isn't provided, not because it isn't medically necessary, but simply because of policy and the deliberate indifference to a serious medical need. I am seeking to have this care provided.

25. The GD Specialists and Dr. Penn are aware that the imposition of male grooming and clothing eradicates my female gender role and expression causing extreme distress, actual harm through self-harm and self-mutilation, and a substantial risk of serious harm through suicidal ideation. This has been documented in my medical record.

26. TDCJ and the Gender Specialists do not provide a full treatment plan for GD based upon individual need. There is a blanket ban on all treatments other than HRT and so assessment isn't properly done for the other treatments based upon individual need. In my case they have noted the need for additional care but have not provided that care or done a proper evaluation to explore what care is needed. In addition to receiving the recommended treatment as already noted I am asking that they make an individual determination of my needs and that this care be provided as needed.

### DEFENDANT LORIE DAVIS

27. Defendant Lorie Davis, TDCJ-CID Director, is responsible for the creation and imposition of both male and female grooming and clothing policies and is responsible for the humane treatment of inmates. When it was noted that I could benefit from the provision of longer hair and female clothing I sought to have this care implemented, namely the allowance to use the female grooming standards

and the provision of female clothing as provided to female inmates. It was the imposition of male clothing and grooming policies on myself which were relied upon in the denial of providing this care. These policies took away the ability of doctors to use their clinical judgement with respect to conditions that are significant, especially when it pertains to medically necessary treatment. The provision of female gender expression through the use of female grooming and clothing policies was not denied because it wasn't medically necessary, nor was the denial based upon an informed medical judgement, it was denied as a matter of policy which prevented informed medical judgement from taking place and necessary medical care provided. Lorie Davis created a policy or custom under which unconstitutional practices occurred and allowed the continuance of such a policy or custom.

<u>LANNETTE LINTHICUM TDCJ HEALTH SERVICES DIV. DIR AND OTHER CORRECTIONAL MANAGED HEALTH CARE COMMITTEE MEMBERS, ROBERT D. BARROW, BEN RAIMER, CYNTHIA JUMPER, ERIN WYRICK, PRESTON JOHNSON, PARKER HUDSON III, JOHN BURMUSA, AND KELLY GARCIA</u>

28. Defendant Lannette Linthicum and the other CMHCC Board Members are responsible for Policy G-51.11 and the provision of health care to myself, the plaintiff. They were responsible for a policy which operated as a blanket ban on all treatment options for GD other than HRT, thus prohibiting medical staff from making a medical determination of an individual inmate's medical needs for GD and from prescribing adequate care to treat those needs. Under this policy plaintiff was denied adequate treatment, not because it wasn't medically necessary, but because it conflicted with policy. They have not provided services to the plaintiff sufficient to diminish the intense emotional distress and the related risks of suicide and self-mutilation, to the point at which I would no longer be at a substantial risk of serious harm. The policies and practices which they were responsible for took away the ability of doctors to use their clinical judgement with respect to conditions that are significant, especially when it pertains to medically necessary treatment. They created a policy or custom under which unconstitutional practices occurred and

13

allowed the continuance of such a policy or custom.

## DEFENDANT DR. JOSEPH PENN

29. Dr. Joseph Penn supervises the Gender Specialists and the implementation of Policy G-51.11. He directly limits what treatments can be prescribed and provided and controls how patient's needs are evaluated and recorded. He directly limits teh Gender Specialists. In my particular case the Gender Specialists have even brought my case before him as they recognized my need for additional care.

30. Dr. Joseph Penn knowingly and unreasonably disregarded an intolerable risk of harm and will continue to do so. He oversees the implementation of Policy G-51.11 and the provision of an easier and less efficacious treatment. He is aware of the need for additional medical care and has intentionally refused to provide that care. They prevented medical providers from evaluating fully the needs of the plaintiff in regards to her treatment. They have not provided services to plaintiff sufficient to diminish the intense emotional distress, and the related risks of suicide and self-mutilation, to the point at which I would no longer be at a substantial risk of self-harm. They took away the ability of doctors to use their clinical judgement with respect to conditions that are significant, especially when it pertains to medically necessary treatment.

ATTACHMENT TO SECTION VI RELIEF

1. Plaintiff seeks an injunction ordering TDCJ to permit plaintiff the use of female grooming standards and to no longer enforce male grooming standards on her.

2. Plaintiff seeks an injunction ordering TDCJ to provide plaintiff with and allow the use of all clothing approved for and provided to female inmates withing TDCJ.

3. Plaintiff seeks a declaratory judgement and injunction ordering the UTMB Dr's and Gender Specialists to provide plaintiff with individualized care based upon her specific needs for treatment of Gender Dysphoria.

4. Plaintiff seeks a declaratory judgement and injunction ordering CMHCC, UTMB, and TDCJ to craft and implement a new version of Policy G-51.11 that will provide for individualized treatment of Gender Dysphoria based upon patients' needs.

5. Plaintiff seeks costs of suit.

6. Plaintiff seeks any other relief which the Court deems appropriate.

C. Has any court ever warned or notified you that sanctions could be imposed? ___ YES  XXX  NO

D. If your answer is "yes", give the following information for every lawsuit in which warning was imposed. (If more than one, use another piece of paper and answer the same questions.)

1. Court that imposed warning (if federal, give the district and division): _____
2. Case number: _____
3. Approximate date warning were imposed: _____

Executed on: 2/10/2020
(Date)

Lilly Anne Hopkins aka Samuel Hopkins
(Printed Name)

*Lilly Anne Hopkins aka Samuel Hopkins*
(Signature of Plaintiff)

## PLAINTIFF'S DECLARATIONS

1. I declare under penalty of perjury all facts presented in this complaint and attachment thereto are true and correct.

2. I understand if I am released or transferred, it is my responsibility to keep the Court informed of my current mailing address and failure to do so may result in the dismissal of this lawsuit.

3. I understand that I must exhaust all available administrative remedies prior to filing this lawsuit.

4. I understand I am prohibited from bringing an *in forma pauperis* lawsuit if I have brought three or more civil actions in a Court of the United States while incarcerated or detained in any facility, which lawsuits are dismissed on the ground they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless I am under imminent danger or serious physical injury.

5. I understand even if I am allowed to proceed without prepayment of costs, I am responsible for the entire **$350** filing fee and costs assessed by the Court, which shall be deducted in accordance with the law from the inmate account by my custodian until the filing fee is paid.

Signed this  10th  day of  February , 20 20 .
(Day)           (Month)              (Year)

Lilly Anne Hopkins aka Samuel Hopkins
(Printed Name)

*Lilly Anne Hopkins aka Samuel Hopkins*
(Signature of Plaintiff)

**WARNING:** The Plaintiff is hereby advised any false or deliberately misleading information provided in response to the following questions will result in the imposition of sanctions. The sanctions the Court may impose include, but are not limbed to monetary sanctions and/or the dismissal of this action with prejudice.

ATC 1983 (Rev. 04/06)

16
Page 5 of 5

Lilly Anne Hopkins, aka
Samuel Hopkins, TDCJ #1986831
Connally Unit
899 FM 632
Kenedy, TX 78119

United States Courts
Southern District of Texas
FILED
FEB 18 2020
David J. Bradley, Clerk of Court

United States District
P.O. Box 61010
Houston, TX 77208

— Legal Mail —