IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LILLY ANNE HOPKINS, A.K.A. §
SAMUEL HOPKINS, §
TDCJ #1986831 §
 §
Plaintiff, §
 §
v. § CIVIL ACTION NO. 4:19-cv-05041
 §
LORIE DAVIS, et al., §
 §
Defendants. §

MOTION TO EXCLUDE TESTIMONY OF THE OFFICE OF ATTORNEY
GENERAL OF TEXAS'S (OAG'S) EXPERT

1. Plaintiff moves for an order excluding the testimony of the

OAG's expert, Shana L. Khawaja, Ph.D. (Khawaja).

2. The grounds for this motion are that Khawaja is not qualified

as an expert, or even layperson, in the treatment or diagnosement

of Gender Dysphoria (GD). The opinion and it's conblusions are based

on unreliable methodology and insufficient facts, and the expert

has unjustifiably extrapolated from an accepted premise to an unfounded

conclusion. The expert's opinion is not relevant in that it would

not assist the trier of fact to determine the facts in issue. And

lastly, the probative value is substantially outweighed by a danger

of unfair prejudice and misleading the jury. For these reasons the

plaintiff asks this court to exclude the testimony of the OAG's expert,

Shana L. Khawaja, Ph.D.

3. This motion is based on the pleadings and papers on file in this

case and the attached memorandum of points and authorities including

it'ls attached Exhibits.

(1)

Respectfully submitted,

By *Lilly Anne Hopkins* 3/11/21
Lilly Anne Hopkins, A.K.A.
Samuel Hopkins TDCJ#1986831
Connally Unit
899 FM 632
Kenedy, TX 78119

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

MAR 15 2021

Nathan Ochsner, Clerk of Court

LILLY ANNE HOPKINS, A.K.A. §
SAMUEL HOPKINS §
TDCJ #1986831, §
 §
Plaintiff, §
 §
v. § CIVIL ACTION NO. 4:19-cv-05041
 §
LORIE DAVIS, et al., §
 §
Defendants. §

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY
OF THE OFFICE OF ATTORNEY GENERAL OF TEXAS's (OAG) EXPERT

Plaintiff Lilly Anne Hopkins asks the Court to exclude the testimony of Shana L. Khawaja, Ph.D. (Khawaja), the OAG's expert.

## A. INTRODUCTION

1. Plaintiff is Lilly Anne Hopkins; defendant is Lorie Davis, et al.

2. Plaintiff sued defendants for declaratory and injunctive relief in regards to deliberate indifference to a serious medical need. The State of Texas through the OAG provided "authenticated" medical records "Bates stamped" 'Hopkins 1 - Hopkins 2690'. Specifically the plaintiff has alleged that she has a serious medical need, Gender Dysphoria (GD), which the record showed (see 'Hopkins; 470, 473, 485, 491, 498, 503, 509, 1044, 1054, 1061, 1407, 1413, 1420, 1440, and 1456') and that her treating specialists are aware of the need for additional care related to gender role and expression (see 'Hopkins 483, 485, 488, 506-7, 1058-61, and 1430'). and that they are aware of a risk of harm related to forced male gender expression (see 'Hopkins 494, 500, 506-9, 1041, 1050, 1058, 1404-5, 1427, and 1430'). The risk of harm and plaintiff's medical care have even been brought to the attention of Defendant Dr. Joseph Penn, the head of TDCJ Psychiatry,

(1)

(see 'Hopkins 488-91/1058-61, 509, and 1407'). The record even documents a suicide attempt after being forced to groom as a man on 3/2/2020 (see 'Hopkins 547-8/1167-68, 644, and 852'), the self inflicted wounds were serious enough to require Hospitalization (see 'Hopkins 852') and required wound care up until 4/17/2020 (see 'Hopkins 1191). Despite the unmet serious medical need the recommended care is not being provided (see 'Hopkins 523 and 1966').

3. The OAG identified Shana L. Khawaja, Ph.D., an employee of the Defendants, to testify about "the cause of action entitled" and submitted her initial testimony in the form of an Affidavit followed by her exhibits which in all but one exhibit removed from and/or reorganized documents from Exhibit 2 of the Martinez report (TDCJ Health Services Archives Medical Records).

4. The Court should exclude the testimony of the OAG's expert because the "expert" is not qualified and the testimony is neither reliable nor helpful to the trier of fact.

## B. ARGUMENT

### Expert not qualified

5. A court should exclude the testimony of an expert witness who is not qualified by knowledge, skill, experience, training, or education to render an opinion based on scientific, technical, or other specialized knowledge. Fed. R. Evid. 702(a); see Fed R. Evid. 104(a); Conroy v. Vilsack, 707 F.3d 1163, 1168-69 (10th Cir. 2013); Khoury v. Philips Med. Sys., 614 F.3d 888, 892-93 (8th Cir. 2010). The OAG's expert is not qualified because, based on her Affidavit and attached Curriculum Vitae, she does not have any training, experience, nor particular knowledge in either the diagnosement of treatment of Gender Dysphoria

(2)

(GD) in either the community or institutional setting. They are not qualified as an expert in GD or even as a layperson in the diagnosement or treatment of GD. This Court should therefore exclude the testimony.

### Expert opinion not reliable

6. A court should exclude the testimony of an expert if it is not reliable, see Kumbo Tire Co. v. Carmichael, 526 U.S. 137, 149 (1999); Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592-93 (1993). a expert witness may be found qualified and highly credible, but his conclusions may be based on unreliable methodology. Scientific evidence that is not grounded in the "methods and procedures of science" is no more than "subjective belief or unsupported speculation". Daubert, 509 U.S. at 590.

7. For the expert's testimony to be reliable, the following requirements must be met: (1) the testimony must be based on sufficient facts or data, (2) the testimony must be the product of reliable principles and methods, and (3) the expert must reliably apply the principles and methods to the facts of the case. Fed. R. Evid. 702; In re Lipitor (Atavastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig. No II) MDL 2502, 892 F.3d 624, 631 (4th Cir. 2018). The Court should exclude the testimony of the OAG's expert Khawaja because the testimony will not be reliable. Specifically the Court should exclude the testimony for the following reasons:

    a. The expert's opinion does not lend itself to verification by the scientific method through testing. See Daubert, 509 U.S. at 593; Newell Rubbermaid, Inc., v. Raymond Corp., 676 F.3d 521, 527-29 (6th Cir. 2012; Bielskis v. Lousiville Ladder, Inc., 663 F.3d 887, 894-95 (7th Cir. 2011). The opinion rests not on medical literature or studies, it rests on the ipse dixit of Khawaja,

(3)

and does not lend itself to verification or testing.

"Reliability' requires that the proponent of the expert testimony must present some objective, independent validation of the expert's methodology" Total E&P USA Inc. v. Marubeni Oil & Gas USA, Inc., 2018 U.S. Dist LEXIS 206005 (referring to Brown v. Illinois Cent. R. Co., 705 F.3d 531, 536 (5th Cir. 2013)). The testimony does not do this nor does it lend itself to verification as it rests primarily on the ipse dixit of Khawaja.

b. The expert's opinion has not been subjected to peer review or publication. See Daubert, 509 U.S. at 593. The opinion, which does not explain it's methodology in any substantial detail, rests not on opinions which have been subjected to peer review and publication. Khawaja's opinion, which stands alone, has not been subjected to peer review or publication.

c. The expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion. See Gen Elec. Co. V. Joiner, 522 U.S. 136,146 (1997); Junk Terminix Int'l Co., 628 F.3d 439, 448 (8th Cir. 2010). For example, probably one of the most pertinent questions is whether my self-harm due to forced masculine gender expression is actually because of that. To answer this question Khawaja could have turned to the record showing a desire to self-harm in response to the distress from GD related issues (see 'Hopkins 303, 339, 351, 355, 404, 483, 500, 507, 548, 610, 644, 647, 671, 1041, 1061, 1404, 1405, 1410, 1422, and 1428'), or they could have turned to the record specifically showing a risk of harm over gender role and expression (see 'Hopkins 494, 500, 506-9, 1041, 1050, 1058, 1404-5, 1427, and 1430') or they could have turned to the record where medical professionals noted my distress over g=

(4)

over gender role and expression and specifically brought their concerns to the attention of others (See 'Hopkins 488-91, 509, 1058-61, and 1407). Instead they relied on just 1 document (Hopkins 18') which they incorrectly read, misquoted, and then based a significant part of their opinion on. In fact this question may be the most important factor in determining whether my care is adequate or inadequate. They read it as showing 14 free world suicide attempts by 'cutting'. The question is about prior suicide attempts and most recent attempt. The response reads "Around 14 - in County 2014 - overdose (non-aspirin)- legal issues". These were not prior to incarceration but were in County Jail where I was confined for over 2 years. Khawaja disregarded the bulk of the record, found one line, and then misread that line and based a significant portion of her opinion on it. Per In re Pauli R.R. Yard PCB Litig, 35 F.3d 717, 745 (3d Cir. 1994) "any step that renders the analysis unreliable...renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." The obvious obvious mistake which forms a cornerstone of Khawaja's opinion renders the opinion based on the mistake unreliable.

d. The expert's opinion is not based on sufficient facts or data. See United States v. Coutentos, 651 F.3d 809, 820 (8th Cir. 2011). Rather than base her opinion on the record as a whole Khawaja selects isolated documents and ignores conflicting documents, allowing her opinion to not be based on the record as a whole. The preceeding paragraphs contain many examples, some quite severe. But as an example to further illustrate this concept, Khawaja

(5)

reports from 8/7/2020 to say that I'm doing good but ignores "Hopkins 365' from the day before (8/6/2020) which indicates that I'm still self mutilating. Because I have no control over what medical chooses to record it is important to get context and perspective rather than cherry pick sentences. Either you base your opinion on the record or you don't, but cherry picking can skew reality. In the preceeding paragraphs I have shown examples of how the testimony was fundamentally unsupported. "An expert opinion that fails to consider the relevant facts of the case is fundamentally unsupported." Neb Plastics, Inc. v. Holland Colors Ams., Inc., 408 F.3d 410,416 (8th Cir. 2005).

e. The expert has not adequately accounted for obvious alternative explanations. See Munoz v. Orr, 200 F.3d 291, 301 (5th Cir. 2000); Claar v. Burlington N. R.R., 29 F3d 499, 502-03 & n.4 (9th Cir. 1994). Khawaja has ignored some rather obvious alternative explanations, such as many Transgender people have attempted to lead heteronormative lives (See Exhibit A), that if the consequences of coming out fully as Transgender can result in the loss of job, family, home, support, social status, or friends; that many people may delay coming out and/or transitioning. That the same applies in prison. Or that if you tell psychiatry personnel in prison every time you are suicidal or self-harm that you will suffer drastic consequences including the treatment known as the 'cold room'; and consequently you might downplay or hide some symptoms unless you feel it is safe to open up. These are all obvious alternative explanations that appear to be unconsidered or accounted for by Khawaja's opinion. Her opinion also importantly ignores the obvious

((6))

alternative explanation that when a gender specialist notes in 'Hopkins 505' on 2/12/2020 that "[w]e discuss[ed] that having forced haircuts triggers worsening self[-]harm and leads to increased thoughts of suicide" and then the next month when I'm ordered to cut my hair (to male grooming standarda) and follow it up with a suicide attempt hours later, the cause is in fact that I attempted suicide over once again being forced to groom as a man. This is of course the obvious explanation but it isn't even considered as an alternative explanation to be ruled out, makøing the opinion essentially worthless, see Munoz at 301, Claar at 502.

f.  The expert's opinion was generated solely for the pending litigation. See Metabolife Int'l., Inc. v. Wornick, 264 F.3d 832, 841 (9th Cir. 2001); Nelson v. Tenn. Gas Pipeline Co., 243 F.3d 244, 252 (6th Cir. 2001). Khawaja as an expert witness is not necessarily an unbiased scientist. She is after all an employee of the defendants. The opinion has no peer review, it did not refer or base itself upon some "objective source, - a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like - to show that they have followed the scientific method, as is practiced by (at least) a recognized minority of scientists in the field." Metabolife at 841 citing Daubert v. Merrell Dow Pharms., Inc., 43 F.3d 1311, 1318-19 (9th Cir. 1995).

8. Plaintiff requests the Court conduct an inquiry to evaluate the reliability of the expert's testimony. The inquiry is necessary because the testimony is complicated and its reliability cannot

(7)

be taken for granted. Daubert, 509 U.S. at 589; see Kumbo Tire, 526 U.S. at 149-52. The Court has discretion in determining what proceedings are needed to investigate reliability, and a hearing is not required for a Daubert inquiry (see Estate of Barubin v. Asten Johnson, Inc., 740 F.3d 457, 463-64 (9th Cir. 2014). Plaintiff asks that the Court conduct a reliability determination, see Carlson v. Bioremedi Therapeutic Sys., 822 F.3d 194, 201 (5th Cir. 2016).

Expert opinion not relevant

8. A court should exclude the opinion testimony of an expert if it is not relevant. Fed. R. Evid. 401, 402, 702; Westberry v. Gislaved Gummi AB, 178 F.3d 257, 260 (4th Cir. 1999); Wintz v. Northrop Vorp., 110 F.3d 508, 512 (7th Cir. 1997); see Daubert v. Merrell Dow. Pharms., Inc., 509 U.S. 579, 592-93 (1993). "The expert testimony must be relevant, not simply in the sense that all testimony must be relevant, Fed. R. Evid. 402, but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." Weiser-Brown Operating Co. v. St. Paul Surplus Line Insur. Co., 801 F.3d 512, 529 (5th Cir. 2015)(citing Bocanegra v. Vicmar Servs., Inc., 320 F.3d 581, 584 (5th Cir. 2003)(itself citing Daubert, 509 U.S. at 591-92))). In Daubert, 509 U.S. at 591 the Supreme Court stated that Rule 702 requires that expert testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.'

9. Khawaja shows no understanding of how to determine if someone is transgender (or has gender syspohoria (GD), shows no understanding of the medical policies relating to the treatment of GD within

(8)

TDCJ, and seems to not even understand concepts of gender identity or how this differs from sexual orientation. Her testimony is confusing to the trier of fact at best, misleading at worst, and will not assist the trier of fact in understanding the evidence or determining facts in issue.

10. On the second page of Khawaja's Affidavit she states she is "familiar with UTMB/CMC policies and procedures with respect to the provision of medical care". There is only 1 Policy dealing with the treatment of Gender Dysphoria. From the Correctional Managed Health Care Policy Manual G-51.11, TREATMENT OF OFFENDERS WITH INTERSEX CONDITIONS or GENDER DYSPHORIA, FORMERLY KNOWN AS GENDER IDENTITY DISORDER(see Exhibit B). This document provides both a definition for Gender Dysphoria and Transgender and also clarifies that policy does not require prior treatment with hormones in order for hormone treatment to be provided to prisoners. Yet despite this Khawaja seems to believe that you must have a history of treatment in the free world and seems suprised that I received treatment, "[d]espite the conflicting information regarding [her] history of treatment for Gender Dysphoria in the free-world." She also shows no understanding of how to determine if someone is transgender, or has GD, despite being given clear and simple definitions. Per G-51.11

> DEFINITIONS
>> Gender Dysphoria (GD) - is defined as the clinically significant distress or impairment that is associated with the marked incongruence between one's experienced or expressed gender and one's assigned gender for a specified time (e.g., of at least 6 months duration). This terminology replaces GID. The diagnosis can be made with aconcurrent disorder of sex development. [Diagnostic and Statistical Manual of Mental Disorders, fifth edition (DSM-5) P.451-459]

(9)

> ...
> Transgender - a person whose gender identity (i.e.
> internal sense of being male or female) is different
> from the person's assigned sex at birth [28 CFR § 115.5]

12. The above definitions are rather clear and straightforward. To the casual observer a simple reading would indicate that someone who has GD is Transgender. It also applies a simple method for determining if someone has GD or is Transgender. These definitions are consistent with definitions provided by the American Heritage dictionary of the English language, 5th Ed., as well as definitions provided by the American Psychiatric Association (see Exhibit C).

13. Despite clear definitions Khawaja expends great effort questioning and attacking my transgender status. She confuses sexual orientation and gender identity even though they are seperate concepts, Simply put sexual orientation is who you are attracted to, gender identity is whether you identify as a man or a woman or something else. Again, see Exhibit C. She constructs her own theories and expectations regarding someone who is transgender, including basing it upon family acceptance, being out to everyone at all times, and even her novel theory that transgender people in the free-wprld with access to treatment don't have a high rate of suicidality.

14. To unravel the confusion. I identify as female, I was assigned the sex of male at birth. This makes me transgender. It doesn't matter who I sleep with or don't, it doesn't matter if I choose to disclose my transgender status or stay closeted, it doesn't matter if my fmaily accepts me or not. But, yes, Khawaja is correct, I have had relations with both men and women. That is not relevant to this case. My aunt has trouble accepting me as transgender, that is her choice not mine, but again not relevant to this case. She

(10)

did observe me dressed as a woman on many occasions and her tolerance
was very important to me. I have also been married, as Khawaja
decided to point out, but they too observed me dressed as a woman
during the period I lived part-time as a woman, see Exhibit D.
15. By engaging in a thorough ad hominem attack and ignoring
plain definitions, and confusing the issues, Khawaja has made
her opinion not relevant. Under Rule 401 Evidence is relevant
if it has any tendency to make a fact more or less probable than it would be
without the evidence and is of consequence in determining the
action. But under Rule 402 even if a court determines that evidence
is relevant it may exclude it if its probative value is substantially
outweighed by a danger of one of the following; unfair prejudice,
confusing the issues, misleading the jury, undue delay, wasting
time or needlessly presenting cumulative evidence. Khawaja has
not advanced the issues. She has confused them. And in doing so her testimony
is not likely to aid the judge or jury in understanding the issues.
In addition to this much of her ad-hominem attack is likely to
cause unfair prejudice, from her discussions of my sexuality
(which is not relevant) to discussion of my relationships (again
not relevant), and in fact is misleading to the judge or jury.
It will not help the trier of fact understand the evidence or
determine a fact at issue. Merrell Dow Pharms., 43 F.3d at 1321
n.17, Contentos, 651 F.3d at 820; Buckner v. Sams Club Inc.,
75 F.3d 290, 293 (7th Cir. 1996); Tuli v. Brigham & Women's Hosp.,
Inc., 592 F.Supp 2d 208, 211-12 & n.4 (D.Mass 2009).

## Attachments

16. Plaintiff attaches the following Exhibits to this motion to

establish facts not apparent from the record.

- Exhibit A. Agency and Social Forces in the Life Course. J Gerontol B. Psychol Sci Soc, 2017, Vol 72, No. 3, 479-497. This shows that many male to female transgender people attempt to lead heteronormative lifes, and delay coming out until later in life for a number of reasons.

- Exhibit B. Correctional Managed Health Care Policy Manual G-51.11. Provides treatment guidelines with TDCJ for the treatment of Gender Dysphoria and also provides basic definitions.

- Exhibit C. Information from the American Psychiatric Association, (1) what is Gender Dysphoria, and (2) Expert Q&A: Gender Dysphoria. This provides simple, easy to understand information on GD and provides terminology useful for the trier of fact to understand GD and it's relevant terms, and to distinguish this from other concepts such as sexual orientation (something Khawaja's opinion does not do).

- Exhibit D. Declaration of my Aunt Sherry. Though simple it does establish that I dressed/lived part time as a woman prior to incarceration. See also the declaration of Rashida Hopkins that was previously provided in the Supplement to the claim. I have attached a courtesy copy here. This establishes facts, though apparent in my testimony not apparent from Khawaja's Opinion.

- Exhibit E. Suicide Thoughts and Attempts Among Transgender Adults in the US. This establishes the high rate of suicide thoughts and attempts for Transgender adults and some of the reasons for this. Khawaja's opinion does not provide any understanding on this topic and this helps explain the topic in better detail and disrupt

the ipse dixit of Khawaja on this topic.

## C. Conclusion

17. In summation, Khawaja is not qualifies as an expert in either the diagnosement or treatment of GD. The opinion and its conclusions are based on unreliable methodology; scientific evidence that is not grounded in the "methods and procedures of science" is no more than "subjective belief or unsupported speculation". Daubert, 509 U.S. at 590. Specifically; the expert's opinion does not lend itself to verification by the scientific method through testing, the expert's opinion has not been subjected to peer review or publication, the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion, the opinion is not basedoon sufficient facts or data (it ignores most of the medical record it is supposed to be based on), the expert has not adequately accounted for obvious alternative explanations, and the expert's opinion was generated solely for the pending litigation not by an independent expert but by an employee of the defendants. The expert's opinion is not relevant in that it would not assist the trier of fact to understand or determine a fact in issue. And lastly, the probative value is substantially outweighed by a danger of unfair prejudice and misleading the jury. For these reasons, I the plaintiff, ask this court to exclude the testimony of the OAG's expert, Shana L. Khawaja, Ph.D.

Respectfully submitted,
*Lilly Anne Hopkins aka Samuel Hopkins* 3/11/2021
Lilly Anne Hopkins AKA Samuel Hopkins
TDCJ #1986831
Connally Unit
899 FM 632
Kenedy, TX 78119

Lily Anne Hopkins AKA
Samuel Hopkins TDCJ#1986831
Connally Unit
899 FM 632
Kenedy, TX 78119

Legal Mail

Clerk
United States District Court
Southern District of Texas
P.O. Box 61010
Houston, TX 77208

United States Courts
Southern District of Texas
FILED

MAR 15 2021

Nathan Ochsner, Clerk of Court

