IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **LILLY ANNE HOPKINS, AKA** § <br> **SAMUEL HOPKINS, TDCJ #1986831** § <br> *Plaintiff,* § <br> § <br> **v.** § <br> § <br> **BOBBY LUMPKIN,** *et al.,* § <br> *Defendants.* § | **CIVIL ACTION NO. 4:19-CV-5041** |

## DEFENDANTS' ORIGINAL ANSWER AND JURY DEMAND

COME NOW Defendants Bobby Lumpkin, Lannette Linthicum, Phonso Rayford, Roger Boyd, Joseph Penn, and Pamela Wagner (collectively, "Defendants"), by and through the Office of the Attorney General for the State of Texas, who file this Original Answer and Jury Demand in response to Plaintiff Lilly Anne Hopkins' Second Amended Complaint. ECF No. 48.

## I.
## STATEMENT OF THE CASE

1. Plaintiff Lilly Anne Hopkins ("Plaintiff") is an inmate currently confined in the Texas Department of Criminal Justice ("TDCJ") at the Wayne Scott Unit in Richmond, Texas.

2. On December 26, 2019, Plaintiff filed suit pursuant to 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to her[1] serious medical needs. ECF No. 1.

---
[1] Throughout this Answer, Defendants use the pronouns she/her, in response to the Court's usage of these pronouns in its Memorandum Opinion and Order Denying Motions to Dismiss. ECF No. 76.

3. In response to Plaintiff's Second Amended Complaint, Defendants moved for dismissal under Federal Rule of Civil Procedure 12. *See* ECF Nos. 57, 58, 59, 60, 64. Plaintiff filed a response to Defendants' motions on January 14, 2022. ECF No. 68. Defendants filed their reply to Plaintiff's response on January 28, 2022. ECF No. 71. Plaintiff filed her surreply on February 3, 2022. ECF No. 75. On April 20, 2022, the Court issued its Memorandum Opinion and Order Denying Motions to Dismiss. ECF No. 76.

4. In her Second Amended Complaint, Plaintiff claims that Defendants failed to provide her with medically necessary treatment for gender dysphoria, "including by denying her hair-length, makeup, and clothing accommodations." ECF No. 48 at 3, 18 ¶ 55. Plaintiff seeks to compel all Defendants through declaratory and injunctive relief to provide her with "access to makeup, female clothing, and female grooming standards, including access to feminine hairstyles." ECF No. 48 at 20 ¶ 60(b).

## II.
## GENERAL DENIAL

Pursuant to Fed. R. Civ. P. 8(b) and for the express purpose of requiring Plaintiff to meet her burden of proof in this suit, Defendants deny each and every allegation contained in Plaintiff's Second Amended Complaint, except those expressly admitted herein.

## III.
## ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

1. Defendants admit that Plaintiff is currently in the custody of the Texas Department

of Criminal Justice – Correctional Institutions Division ("TDCJ-CID"). Defendants deny that Plaintiff is being denied medically necessary treatment for gender dysphoria. Defendants further deny the remainder of the allegations set forth in Plaintiff's introductory paragraphs and ¶1 of Plaintiff's Second Amended Complaint.

2. Defendants admit that Plaintiff's action seeks declaratory and injunctive relief but deny that TDCJ, TDCJ-CID, UTMB, UTMB-CMC, CMHC, or CMHCC employees have violated Plaintiff's constitutional rights.

3. Defendants admit that Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Defendants deny that they have violated Plaintiff's Eighth Amendment rights.

4. Defendants deny that this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3). Defendants further deny that this controversy arises under the Constitution and laws of the United States.

5. Subject to Defendants' denial of this Court's jurisdiction, Defendants admit that venue is proper in the Southern District of Texas, pursuant to 28 U.S.C. 1391(b). Defendants admit that at least one defendant resides in this district and all Defendants reside in this State.

6. Defendants deny that Plaintiff has fully exhausted the administrative remedies reasonably available to her, in accordance with the Prison Litigation Reform Act, 42 U.S.C. § 1997(e)(a), prior to bringing her 42 U.S.C. § 1983 civil rights claims.

7. Defendants admit that Plaintiff is 42 years old. Defendants admit that Plaintiff

3

identifies as a woman. Defendants admit that Plaintiff has been diagnosed with gender dysphoria. Defendants admit that Plaintiff is serving two concurrent thirty-five (35) year sentences, in the custody of TDCJ-CID. Defendants deny that Plaintiff is currently incarcerated at the John B. Connally Unit in Kenedy, Texas.

8. Defendants admit that Phonso Rayford is a Warden of the John B. Connally Unit. Defendants admit that Rayford is sued in his official capacity. Defendants admit that at all times relevant to Plaintiff's Second Amended Complaint, Rayford was acting under the color of state law and in the course and scope of his employment. Defendants deny Plaintiff's characterization of the scope of the duties of Senior Warden and therefore deny the remainder of the allegations contained in ¶8 of Plaintiff's Second Amended Complaint.

9. Defendants admit that Roger Boyd is an Assistant Warden of the John B. Connally Unit. Defendants admit that Boyd is sued in his official capacity. Defendants admit that at all times relevant to Plaintiff's Second Amended Complaint, Boyd was acting under the color of state law and in the course and scope of his employment. Defendants deny Plaintiff's characterization of the scope of the duties of Assistant Warden and therefore deny the remainder of the allegations contained in ¶9 of Plaintiff's Second Amended Complaint.

10. No response is required to ¶10 of Plaintiff's Second Amended Complaint

11. Defendants admit that Bobby Lumpkin is the Director of TDCJ-CID. Defendants admit that Lumpkin is sued in his official capacity. Defendants deny that Lumpkin,

4

as Director of TDCJ-CID, is responsible for ensuring the provision of constitutionally adequate medical care for all people in the custody of TDCJ-CID, including those requiring treatment for gender dysphoria. Defendants deny that any TDCJ policy at issue in this suit resulted in constitutionally inadequate medical care. Defendants admit that at all times relevant to Plaintiff's Second Amended Complaint, Lumpkin was acting under the color of state law and in the course and scope of his employment. Defendants deny the remainder of the allegations contained in ¶11 of Plaintiff's Second Amended Complaint.

12. Defendants admit that Lannette Linthicum, MD is the Director of TDCJ's Health Services Division. Defendants admit that Linthicum is a Member of CMHCC. Defendants admit that Linthicum is sued in her official capacity. Defendants deny that Linthicum is individually responsible for ensuring that TDCJ-CID health care policies, directives, and protocols are properly implemented at all facilities and for updating and creating administrative directives, clinic, and health guidelines, including those that relate to care for gender dysphoria. Defendants admit that the Health Services Division oversees the Office of Professional Standards, which is responsible for review of second step medical grievances. Defendants deny that Linthicum is solely responsible for the development of statewide policies for the delivery of correctional health care, including Correctional Managed Health Care Policy G-51.11, covering treatment for gender dysphoria. Defendants admit that at all times relevant to Plaintiff's Second Amended Complaint, Linthicum was acting

under the color of state law and in the course and scope of her employment. Defendants deny the remainder of the allegations contained in ¶12 of Plaintiff's Second Amended Complaint.

13. Defendants admit that Joseph Penn, MD is the Director of Mental Health Services at UTMB's Correctional Managed Care ("UTMB-CMC"). Defendants admit that Penn is sued in his official capacity. Defendants deny that Penn acts as the statewide mental health supervisor for TDCJ-CID. Defendants admit that Penn facilitates and oversees all facets of mental health services within UTMB-CMC. Defendants admit that Penn oversees psychological care, psychiatric evaluations, crisis intervention, and provides psychiatric evaluations. Defendants admit that Penn implements the policies of CMHCC related to mental health care, including Policy G-51.11, covering treatment for gender dysphoria. Defendants deny that Penn supervises TDCJ-CID Gender Specialists. Defendants deny that Penn personally denied Plaintiff's Gender Specialists' requests for additional gender-affirming care, including on or about January 30, 2019 and February 12, 2020. Defendants admit that at all times relevant to Plaintiff's Second Amended Complaint, Penn was acting under the color of state law and in the course and scope of his employment.

14. Defendants admit that Pamela Wagner is a Nurse Practitioner at the John B. Connally Unit. Defendants admit that Wagner is sued in her official capacity. Defendants deny that Wagner is responsible for Plaintiff's regular medical care. Defendants further deny that Wagner has been deliberately indifferent to Plaintiff's

serious medical needs. Defendants deny that Wagner has refused to implement Plaintiff's Gender Specialists' recommendation for additional gender-affirming care, including refusing access to female grooming standards, female hairstyles, and makeup. Defendants admit that at all times relevant to Plaintiff's Second Amended Complaint, Wagner was acting under the color of state law and in the course and scope of her employment.

15. Defendants lack knowledge or information sufficient to admit or deny the specific allegations contained in ¶15 of Plaintiff's Second Amended Complaint.

16. Defendants lack knowledge or information sufficient to admit or deny the specific allegations contained in ¶16 of Plaintiff's Second Amended Complaint.

17. Defendants admit that gender dysphoria is a medical condition marked by clinically significant distress that may accompany the incongruence between one's experienced or expressed gender and one's gender assigned at birth. Defendants deny that the American Medical Association, the American Psychiatric Association, the American Psychological Association, the Endocrine Society, the World Professional Association for Transgender Health ("WPATH"), and courts across the country recognize gender dysphoria as a serious medical condition.

18. Defendants admit that gender dysphoria, if left untreated, can result in clinically significant psychological distress and dysfunction, debilitating depression, and for some, suicide and death. Defendants deny the remainder of the allegations contained in ¶18 of Plaintiff's Second Amended Complaint.

19. Defendants admit that gender dysphoria is a diagnosable and treatable condition. Defendants admit that gender dysphoria is included in the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ("DSM-5"). Defendants admit that gender dysphoria is included in the International Classification of Diseases-10 (World Health Organization).

20. Defendants deny that WPATH is the leading professional organization dedicated to understanding and treatment of gender dysphoria in correctional settings. Defendants admit that WPATH publishes and maintains the *Standards of Care for the Health of Transsexual, Transgender, and Gender Nonconforming People* ("WPATH SOC"). Defendants deny that the WPATH SOC reflect the most up-to-date science and professional consensus on treatment of gender dysphoria in correctional settings. Defendants admit that the current edition was published in 2012. Defendants deny that the WPATH SOC are widely accepted by the medical community. Defendants admit that the WPATH SOC are accepted by the American Medical Association, the American Psychological Association, and have been considered by some federal courts, but deny that the WPATH SOC provide the research-based and clinically accepted best practices for treating individuals with gender dysphoria.

21. Defendants admit that the WPATH SOC list different options for the treatment of gender dysphoria in the community, but deny that there is guidance for correctional settings.

22. Defendants deny that a critical component of alleviating the symptoms of gender

dysphoria is being able to socially transition to express one's gender identity, including through dress and grooming. Defendants admit that the American Medical Association, the American College of Physicians, and fourteen other medical associations have said that "[s]ocial transition—*i.e.*, living one's life fully in accordance with one's gender identity—is often a critically important part of treatment." Defendants admit that the American Medical Association, the American College of Physicians, and fourteen other medical associations have said that allowing transgender people to dress and groom themselves in accordance with their gender identity is one of many treatment options. Defendants admit that the American Medical Association, the American College of Physicians, and fourteen other medical associations have said that treatment for gender dysphoria is "highly effective in reducing or eliminating the incongruence and associated distress between a person's gender identity and assigned sex at birth."

23. Defendants admit that the National Commission on Correctional Health Care ("NCCHC") has a position statement that recommends that the treatment of prisoners with gender dysphoria "should follow accepted standards developed by professionals with expertise in transgender health." Defendants admit that the NCCHC cites the WPATH SOC as a consideration.

24. Defendants admit that gender dysphoria is a condition recognized by the Correctional Managed Health Care Committee, in Policy G-51.11. Defendants admit that treatment for gender dysphoria is determined on a case-by-case basis, as

9

clinically indicated. Defendants admit that Policy G-51.11 refers to the WPATH SOC and the DSM-5.

25. Defendants admit that Plaintiff is 42 years old. Defendants admit that Plaintiff identifies as a woman.

26. Defendants lack knowledge or information sufficient to admit or deny the specific allegations contained in ¶26 of Plaintiff's Second Amended Complaint.

27. Defendants lack knowledge or information sufficient to admit or deny the specific allegations contained in ¶27 of Plaintiff's Second Amended Complaint.

28. Defendants lack knowledge or information sufficient to admit or deny the specific allegations contained in ¶28 of Plaintiff's Second Amended Complaint.

29. Defendants lack knowledge or information sufficient to admit or deny the specific allegations contained in ¶29 of Plaintiff's Second Amended Complaint.

30. Defendants admit that Plaintiff entered TDCJ-CID custody in 2015. Defendants lack knowledge or information sufficient to admit or deny the remaining specific allegations contained in ¶30 of Plaintiff's Second Amended Complaint.

31. Defendants admit that in January 2016, Plaintiff began to seek hormone therapy from UTMB-CMC health care staff. Defendants deny that Plaintiff's requests were denied. Defendants lack knowledge or information sufficient to admit or deny the remaining specific allegations contained in ¶31 of Plaintiff's Second Amended Complaint.

32. Defendants deny that on March 12, 2016, a guard ordered Plaintiff to remove her

makeup. Defendants deny that a guard told her she was not a woman due to Plaintiff still having testicles. Defendants lack knowledge or information sufficient to admit or deny that Plaintiff used blades from razors meant for facial shaving to castrate herself. Defendants are unable to admit or deny that Plaintiff's castration led to profuse bleeding and nearly resulted in Plaintiff's death. Defendants admit that Plaintiff was taken to a hospital for emergency surgery. Defendants admit that Plaintiff received a blood transfusion.

33. Defendants admit that upon her return from the hospital, TDCJ-CID required Plaintiff to dress and groom in accordance with TDCJ policy. Defendants deny that Plaintiff was denied hormones. Defendants admit that Plaintiff claimed she attempted to commit suicide as a result of a denial of gender dysphoria treatment. Defendants lack knowledge or information sufficient to admit or deny the remaining specific allegations contained in ¶33 of Plaintiff's Second Amended Complaint.

34. Defendants admit that Plaintiff was formally diagnosed with gender dysphoria on October 10, 2016. Defendants admit that Kayli Dozier Joachim, NP acknowledged her as a transgender woman and used female pronouns to refer to her. Defendants deny that Jesse Gordon, DO acknowledged her as a transgender woman. Defendants admit that Jesse Gordon, DO used female pronouns to refer to her.

35. Defendants admit that Plaintiff is required to maintain hair length in accordance with TDCJ policy. Defendants deny that Plaintiff is required to wear a male uniform. Defendants lack knowledge or information sufficient to admit or deny whether

Plaintiff is allowed to wear removable makeup.

36. Defendants admit that on December 12, 2016, Plaintiff began to receive hormone therapy. Defendants lack knowledge or information sufficient to admit or deny the remaining specific allegations contained in ¶36 of Plaintiff's Second Amended Complaint.

37. Defendants admit that TDCJ has a policy allowing individuals to wear brassieres when medically appropriate, but deny that TDCJ has a policy to allow incarcerated persons in general to own a brassiere. Defendants lack knowledge or information sufficient to admit or deny the remaining specific allegations contained in ¶37 of Plaintiff's Second Amended Complaint.

38. Defendants deny that TDCJ provided inadequate gender dysphoria treatment. Defendants admit that Plaintiff has tattooed on her own makeup and made her own panties.

39. Defendants admit that while in TDCJ-CID custody, Plaintiff has sought to dress and groom herself as a female. Defendants admit that Plaintiff's requests to dress and groom herself as a female have been denied.

40. Defendants lack knowledge or information sufficient to admit or deny that Plaintiff continued to suffer from gender dysphoria while not being able to express her gender identity. Defendants deny that Plaintiff's treating Gender Specialists opined that Plaintiff would benefit significantly from being able to dress and groom herself as a woman.

41. Defendants admit that on October 30, 2018, Kayli Dozier Joachim, NP noted that, "[b]ased on severe distress [Plaintiff] could benefit from being able to express self as female." Defendants deny that Dozier concluded that Plaintiff could benefit from female hair and dress.

42. Defendants admit that or about January 30, 2019, Dr. Jesse Gordon, DO also noted that Plaintiff continued to experience "significant dysphoria related to gender expression" and "discussed with Dr[.] Joseph Penn."

43. Defendants admit that on July 30, 2019, Kayli Dozier Joachim, NP noted that Plaintiff was "worried about having a forced hair cut on Connally Unit. [Plaintiff] was extremely distressed after last hair cut. . . . Is worried about getting suicidal due to restriction on gender expression."

44. Defendants admit that on or about February 12, 2020, Plaintiff's Gender Specialists discussed Plaintiff's care and treatment plan with Dr. Joseph Penn.

45. Defendants admit that during a clinical visit in 2020, Plaintiff's Gender Specialists noted that Plaintiff is at a "particularly high risk for suicide" and continues to engage in self-harm, including cutting her arms and legs. Defendants deny that during a visit in 2020, Plaintiff's Gender Specialists noted that Plaintiff is at a "particularly high risk for suicide" and continues to engage in self-harm, including cutting her arms and legs, due to the stress of being denied access to female grooming standards, including makeup, proper clothing, and appropriate hairstyles. Defendants lack knowledge or information sufficient to admit or deny that during a clinical visit in

2021, Plaintiff's Gender Specialists noted that Plaintiff is at "a particularly high risk for suicide" and continues to engage in self-harm, including cutting her arms and legs, due to the stress of being denied access to female grooming standards, including makeup, proper clothing, and appropriate hairstyles.

46. Defendants admit that since December 2018, Plaintiff has utilized TDCJ-CID's grievance process regarding TDCJ's grooming standard. Defendants deny that her Gender Specialists recommended Plaintiff be allowed to express herself as a female through female grooming standards. Defendants admit that Plaintiff was informed that "medical has no control of the policies set forth by TDCJ regarding hair growth and panties."

47. Defendants admit that after learning that "medical has no control," Plaintiff filed grievances with TDCJ security seeking to be allowed to express her gender identity by being allowed to grow her hair and to wear panties.

48. Defendants deny that all of Plaintiff's grievances, to both medical and security, have been denied by the authorities in her facility and by TDCJ-CID's central offices.

49. Defendants lack knowledge or information sufficient to admit or deny the specific allegations contained in ¶49 of Plaintiff's Second Amended Complaint.

50. No response is required to ¶50 of Plaintiff's Second Amended Complaint

51. Defendants admit that Plaintiff has been diagnosed with gender dysphoria, but deny the remaining allegations contained in ¶51.

52. Defendants deny the allegations as pled herein.

53. Defendants deny the allegations as pled herein.

54. Defendants deny the allegations as pled herein.

55. Defendants deny the allegations as pled herein.

56. Defendants deny the allegations as pled herein.

57. Defendants deny the allegations as pled herein.

58. Defendants deny the allegations as pled herein.

59. Defendants admit that at all times relevant to Plaintiff's Second Amended Complaint, Defendants and other TDCJ, TDCJ-CID, UTMB, UTMB-CMC, CMHC, or CMHCC officials were acting under the color of state law and in the course and scope of their employment.

60. No response is required to ¶60 of Plaintiff's Second Amended Complaint

## IV.
## DEFENDANTS' OTHER ANSWERS AND AFFIRMATIVE DEFENSES

1. Plaintiff failed to state a claim for which relief can be granted under the Eighth Amendment or under any other statute, constitutional theory, or legal theory.

2. Defendants deny that Plaintiff was deprived of any right, privilege, or immunity granted or secured by the Constitution and/or laws of the United States.

3. Defendants are employees of TDCJ, TDCJ-CID, UTMB-CMC, CMHC, or CMHCC, and assert immunity from suit to all claims brought against them in their official capacities.

4. Defendants assert that Plaintiff has failed to allege how their alleged actions violated

Plaintiff's constitutional rights.

5. Defendants invoke all limitations, defenses, and exclusions set forth in the Prison Litigation Reform Act and any other applicable statutes.

6. Defendants assert that any claim premised upon the law of negligence will not support a claim of constitutional dimension.

7. Defendants assert that any claim premised upon the doctrine of *respondeat superior* will not support a claim of constitutional dimension.

8. Defendants assert the defenses of res judicata, statute of limitations, laches, estoppel, waiver, and lack of jurisdiction to Plaintiff's claims in this lawsuit.

9. Defendants assert their right to raise additional defenses that become apparent throughout the factual development of the case.

10. Defendants deny that Plaintiff is entitled to damages or any other relief demanded in Plaintiff's Second Amended Complaint and further deny that Plaintiff is entitled to costs in any amount whatsoever.

11. Defendants assert that the Eleventh Amendment to the United States Constitution bars relief under Plaintiff's selected statute because the *Ex parte Young* exception is inapplicable to the claims raised in this case, and Plaintiff has failed to point to any other valid theory excusing the jurisdictional bar created by the Eleventh Amendment.

12. Defendants assert Eleventh Amendment Immunity to any claim for damages brought against them in their official capacities.

13. Defendants specifically invoke entitlement to Eleventh Amendment Immunity and sovereign immunity as to any of Plaintiff's claims which are not expressly and unambiguously included within the limited waivers of sovereign immunity found in any statute under which Plaintiff makes claims.

14. Pursuant to 42 USC § 1988, Defendants will be entitled to recover their attorneys' fees if they are the prevailing parties.

15. Even were she to prevail, which she should not, Plaintiff is not entitled to recover attorneys' fees that are unreasonable, excessive, unwarranted, and unrelated to this litigation.

16. Defendants specifically plead all affirmative defenses set forth in Rule 8(c) of the Federal Rules of Civil Procedure which are applicable to this case and any and all other affirmative defenses and qualified and good faith immunities, all of which are pled herein as if copied in extenso.

## V.
## JURY DEMAND

Defendants request a trial by jury.

## VI.
## CONCLUSION

Defendants ask the Court to deny all relief requested by Plaintiff, to enter judgment in their favor as to all claims asserted by Plaintiff, and to be granted all such other and further legal and equitable relief to which Defendants may be entitled.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN E. COWLES**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Assistant Attorney General
Chief, Law Enforcement Defense Division

/s/ JACOB E. PRZADA
**JACOB E. PRZADA**
Attorney-In-Charge
Assistant Attorney General
Texas State Bar No. 24125371
Southern District I.D. No. 3725701

Law Enforcement Defense Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9814
jacob.przada@oag.texas.gov

**ATTORNEYS FOR DEFENDANTS LUMPKIN, LINTHICUM, RAYFORD, BOYD, PENN, AND WAGNER**

## NOTICE OF ELECTRONIC FILING

I, **JACOB E. PRZADA**, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing a true copy of the above **Defendants' Original Answer and Jury Demand** in accordance with the Electronic Case Files System of the Southern District of Texas on May 4, 2022.

/s/ JACOB E. PRZADA
**JACOB E. PRZADA**
Assistant Attorney General

## CERTIFICATE OF SERVICE

I, **JACOB E. PRZADA**, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above **Defendants' Original Answer and Jury Demand** has been served on all counsel of record by the Electronic Case Files System of the Southern District of Texas on May 4, 2022.

/s/ JACOB E. PRZADA
**JACOB E. PRZADA**
Assistant Attorney General